(No. 42800.—▮▮▮▮▮▮▮▮▮▮)

B & L PHARMACY, INC., Appellee, *vs.* METROPOLITAN LIFE INSURANCE COMPANY *et al.*, Appellants.

*Opinion filed May 27, 1970.—Rehearing denied October 6, 1970.*

CULBERTSON, J., took no part.

MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, and McDERMOTT, WILL & EMERY, both of . Chicago, (MILES G. SEELEY, LEE N. ABRAMS, THEODORE A. GROENKE, and EDWARD J. BRUNET, of counsel,) for appellants Metropolitan Life Insurance Co. and Caterpillar Tractor Co.

HAROLD A. KATZ, IRVING M. FRIEDMAN, and CHARLES BARNHILL, JR., all of Chicago, (KATZ & FRIEDMAN and STEPHEN I. SCHLOSSBERG, of counsel,) for appellants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

JAMES B. HATCHER and J. MICHAEL MATHIS, both of Peoria, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, B & L Pharmacy, the operator of a drug store in Peoria, Illinois, brought this action on September 26, 1969, to enjoin the defendants, Metropolitan Life Insurance Company, Caterpillar Tractor Company, The Kroger Company (Super-X), Ford-Hopkins Company (S & C Drugs), and Walgreen Company, from putting

into effect a prepaid prescription drug service plan, known as the MediMET plan. The plan was negotiated in collective bargaining between Caterpillar and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and was designed to provide prescription drug services for the employees of Caterpillar. Caterpillar insured its obligations under the plan by amending its existing group medical insurance policy with the defendant Metropolitan Life Insurance Company.

The complaint alleged that the MediMET plan violates the Illinois Antitrust Act. (Ill. Rev. Stat. 1969, ch. 38, pars. 60—1 *et seq.*) The circuit court of Peoria County denied a motion by the UAW, which was permitted to intervene in the suit as a party defendant, to dismiss the complaint, and allowed the plaintiff's motion for a temporary injunction. The defendants Caterpillar Tractor Company and Metropolitan Life Insurance Company appealed to the Appellate Court, Third District, under Supreme Court Rule 307. (43 Ill.2d R. 307.) Thereafter we granted a direct appeal to this court under Rule 302(d). 43 Ill.2d R. 302(d).

Under the basic MediMET agreement and a separate prescription drug schedule, incorporated in the basic agreement by reference, local pharmacists are invited to sign contracts with Metropolitan as "Participating Providers" of prescription drugs. The Participating Providers are to verify the eligibility of persons applying for benefits, and to provide them with "covered drugs" for a charge equal to the acquisition cost of the drug to the pharmacist plus a dispensing fee of $2.10. The Participating Provider then collects this charge from Metropolitan Insurance Company less a "co-payment" amount of $2 which he collects directly from the beneficiary when the prescription is filled. An employee who does not purchase from a Participating Provider is to be reimbursed for 75% of the usual charge for the

prescription if it is provided by a Non-Participating Provider located in the State in which he permanently resides or is employed, or for 100% of the usual charge if it is provided by any other Non-Participating Provider or by a physician.

The agreement provides that Metropolitan has the right to review the business records and prescription files of Participating Providers to assure compliance with the agreement, and that the agreement is terminable by either party upon thirty days written notice or by Metropolitan for violation of the agreement or "for other good cause." The separate prescription drug schedule, in addition to setting the dispensing fee and the co-payment amount, defines what drugs are covered by the plan, and establishes October 1, 1969, as the date the plan is to go into effect.

Pursuant to sections 355 and 367(2) of the Insurance Code (Ill. Rev. Stat. 1969, ch. 73, pars. 967, 979(2)), the insurance contract and related forms were submitted to and approved by the State Director of Insurance. After approval, pharmacists in areas where Caterpillar plants are located were invited to become "Participating Providers" in the plan, and by September 15, 1969, 208 pharmacies had agreed to do so.

The MediMET plan is not unique to the parties in the case before us. The UAW has negotiated similar plans covering more than 1,000,000 union members in other States, including all the bargaining-unit employees of General Motors Corporation, Ford Motor Company, Chrysler Corporation, International Harvester Company, Deere and Company, and Allis Chalmers. More than 80% of the pharmacists in Michigan have agreed to become Participating Providers in the UAW plan, and the record shows that at least 50% of the pharmacists in Illinois have signed up with various insurance companies covering employers who had agreed to the UAW plan in collective bargaining. It has been pointed out that a number of States, including Illinois,

use this technique to provide prescription drug service to Medicaid patients, and that the Federal government provides prescription drug benefits to military personnel and their dependents by this method. Moreover, the Pharmaceutical Service Plan Act (Ill. Rev. Stat. 1969, ch. 32, pars. 691.1 *et seq.*) authorizes certain groups to operate such plans.

The complaint alleged that the defendants contracted, combined and conspired in violation of section 3(2) of the Illinois Antitrust Act, (Ill. Rev. Stat. 1969, ch. 38, par. 60—3(2)) for the purpose of fixing the fee for dispensing pharmaceutical drugs, urging a boycott of the plaintiff and other pharmacies by sending a list of pharmacies participating in the plan to the employees of Caterpillar, soliciting pharmacists to join in the scheme against their desires and best interests, and gaining access to the business records and confidential prescription files of participating pharmacists to assure uniformity of acquisition costs.

The complaint also alleged that the defendants, Super-X, S & C and Walgreen, combined and conspired with each other and with other participating pharmacies in violation of sections 3(1) and 3(2) of the Antitrust Act (Ill. Rev. Stat. 1969, ch. 38, par 60—3(1)(2), for the purpose of fixing, controlling and maintaining the price of, and the fee to be charged for dispensing, prescription drugs covered by the MediMET plan.

Further paragraphs of the complaint alleged that Caterpillar and Metropolitan had illegally contracted to provide a prescription drug service plan without complying with the Pharmaceutical Service Plan Act (Ill. Rev. Stat. 1969, ch. 32, pars. 691.1 *et seq.*), and that Metropolitan's entry into contracts with participating pharmacies to fix the fee to be charged for dispensing drugs was unlawful under Metropolitan's qualification to do business in Illinois under the Insurance Code. Ill. Rev. Stat. 1969, ch. 73, pars. 964 *et seq.*

In addition to damages and a permanent injunction, the

plaintiff sought a temporary injunction on the ground that it, as a Non-Participating Pharmacy, would lose the trade of Caterpillar employees and thereby suffer irreparable injury.

Caterpillar Tractor Company and Metropolitan Life Insurance Company filed answers in which they denied the substantive allegations of the complaint and alleged as affirmative defenses that the plan was excepted from the reach of the Antitrust Act by exemptions in the Act for "the activities of any labor organization * * * which are directed solely to labor objectives which are legitimate under the laws of either the State of Illinois or the United States", and for "the activities * * * of any insurer * * * to the extent that such activities are subject to regulation by the Director of Insurance of this State under, or are permitted or are authorized by, the Insurance Code or any other law of this State; * * *" (Ill. Rev. Stat. 1969, ch. 38, pars. 60—5(1)(4).) They also affirmatively alleged that the plan did not violate the Pharmaceutical Service Plan Act. (Ill. Rev. Stat. 1969, ch. 32, pars. 691.1 *et seq.*) In addition the UAW was allowed to intervene as a party defendant, and it filed a motion to dismiss the complaint on the grounds that the labor exemption in the Antitrust Act was applicable, and that the plan was a mandatory subject of collective bargaining under the National Labor Relations Act and therefore that the subject matter was preempted by Federal law. It also filed an affidavit of an employee in opposition to the plaintiff's motion for a temporary injunction.

The court denied the motion to dismiss, and after taking the case under advisement, granted the plaintiff's motion for a temporary injunction. The temporary injunction restrained Metropolitan and Caterpillar "from pursuing the provisions of Paragraph 7(P), Sub 1 of the Group Insurance Program between Caterpillar and Metropolitan and soliciting and honoring the claims of the Participating Pro-

viders under the MediMET Prescription Drug Agreement and the MediMET Prescription Drug Schedule insofar as such Agreement and Schedule relate to purchases by employees of the Caterpillar Tractor Company, pendente lite." No injunction was granted against reimbursing employees for drugs purchased from Non-Participating Providers or physicians.

In a written opinion in support of its decision the court concluded that "it [is] evident that the popularity of the program will sooner or later pretty much establish a uniform pricing plan throughout the entire state and will force virtually every druggist to become a Participating Provider in one or more of the various group programs. Having regard to the number of persons who are now or will likely be covered by such group programs in the foreseeable future by Metropolitan Life Insurance Company or its competing carriers, it is the opinion of the Court that a legal sanction and ratification of this plan would lead to a loss of competition and an extensive price fixing program in the pharmaceutical trade. There is, therefore, a reasonable probability that the Plaintiff will succeed at the trial."

The court held that the UAW's argument that the plan was a proper labor objective gained through collective bargaining as a fringe benefit for the employees "beg[s] the question of whether or not illegal price fixing and restraint of trade is involved," and stated that the use of Participating Providers was not an essential part of the collective bargaining agreement. The court also found the insurance exemption inapplicable, stating, "[the Insurance Code has] to do with insurance policy provisions which are clear and understandable and which provide for the protection of a known risk for a premium. The fact that a risk is determined and a premium fixed therefore has nothing to do with an attempted limitation of the potential risk by price fixing or a cost determination."

In this court the defendants renew their contentions

based upon the exemptions for insurance and labor activities in the Illinois Antitrust Act. Section 5 of that Act (Ill. Rev. Stat. 1969, ch. 38, par. 60—5) exempts many activities from the prohibitions of the statute. Paragraph (4) of section 5 provides: "No provisions of this Act shall be construed to make illegal: * * * (4) the activities * * * of any insurer, insurance agent, insurance broker, independent insurance adjuster or rating organization to the extent that such activities are subject to regulation by the Director of Insurance of this State under, or are permitted or are authorized by, the Insurance Code or any other law of this State; * * *."

The defendants contend that the plan is permitted by the Pharmaceutical Service Plan Act (Ill. Rev. Stat. 1969, ch. 32, pars. 691.1 *et seq.*) and thus comes within the antitrust exemption as an activity "permitted * * * by * * * any other law of this State." The Pharmaceutical Service Plan Act authorizes the formation of nonprofit corporations called "pharmaceutical service plan corporations", with the power to contract with "participating pharmacies" for the purpose of furnishing pharmaceutical services to the class of persons designated by the corporation as beneficiaries. Section 31 of that Act provides: "Payment for pharmaceutical services may be made to participating or nonparticipating pharmacies at rates adopted by the board of trustees." Ill. Rev. Stat. 1969, ch. 32, par. 691.31.

Section 14 of the Act makes it unlawful "for any person, except a pharmaceutical service plan corporation chartered in accordance with the provisions of this Act and operating in accordance with authority from the Director [of Insurance], to establish, maintain or operate a pharmaceutical service plan, or to solicit subscribers to or enter into contracts with respect to a pharmaceutical service plan." (Ill. Rev. Stat. 1969, ch. 32, par. 691.14.) But that section also provides that the Act shall not be construed as preventing an employer "from furnishing pharmaceutical serv-

ices for the prevention of disease among employees * * *; nor shall it be construed to prohibit an insurance company, or other corporation or society which is subject to the supervision of the Director, from operating in accordance with the laws governing insurance companies, or such corporations or societies; nor shall it be construed to prohibit the continued operation of any pharmaceutical, dental, medical or health service plan in existence or functioning upon the effective date of this Act." Since the Act permits an insurance company to operate a prepaid prescription drug plan like the one involved in this case, the defendants contend that their activities fall within the exemption of the Antitrust Act.

In addition to the Pharmaceutical Service Plan Act, Illinois has enacted a Medical Service Plan Act (Ill. Rev. Stat. 1969, ch. 32, pars. 563 *et seq.*), a Voluntary Health Services Plans Act (Ill. Rev. Stat. 1969, ch. 32, pars. 595 *et seq.*), a Vision Service Plan Act (Ill. Rev. Stat. 1969, ch. 32, pars. 651 *et seq.*), and a Dental Service Plan Act (Ill. Rev. Stat. 1969, ch. 32, pars. 690.1 *et seq.*). All of these Acts operate in a manner similar to the Pharmaceutical Service Plan Act and the MediMET plan in that they contemplate Participating Providers who agree to furnish health services to subscribers for fees fixed by the corporation which promotes and manages the plan.

The plaintiff contends that section 14 of the Pharmaceutical Service Plan Act operates to exempt Metropolitan from the requirements of the Act "only if the Insurance laws allowed it to establish a 'pharmaceutical service plan' prior to passage of the Act." And since the insurance laws of Illinois have never either authorized, prohibited, or regulated a medical service plan, the plaintiff argues that Metropolitan may not now operate such a plan. The plaintiff thus considers the exemption for insurance companies to be no more than an expression of legislative concern that methods of prescription drug insurance which had been expressly

authorized by the insurance laws, should not be jeopardized by the passage of the Act. This explanation is supported, the plaintiff argues, by the final clause of section 14, which permits "the continued operation of any pharmaceutical, dental, medical or health service plan in existence and functioning upon the effective date of this Act." This "grandfather clause" would be unnecessary, the plaintiff says, if pharmaceutical service plans were already authorized under the insurance laws.

We cannot agree with this construction of the statute. If the legislature had been concerned only that other methods of drug insurance in existence at the time the Pharmaceutical Service Plan Act was passed would not be jeopardized, it need not have included the insurance exemption at all. The Act prohibits only the unauthorized operation of a "pharmaceutical service plan" as defined in the Act, and no exemption for other methods of providing prepaid prescription drug insurance was necessary. Nor would the prior authorization of prepaid prescription drug plans under the insurance laws have made the "grandfather clause" unnecessary, since insurance companies are not necessary participants in the operation of pharmaceutical service plans. That clause, in our opinion, was intended to protect organizations which were operating "pharmaceutical service plans" when the Act was adopted, but which did not then comply with it. We hold, therefore, that Metropolitan comes within the insurance exemption of section 14.

We have also concluded that the exemption in the Pharmaceutical Service Plan Act for employers who provide prescription drug services to their employees is applicable to the MediMET plan. The plaintiff argues that this exemption for employers "is only for providing pharmaceutical services and not for establishing pharmaceutical service plans." But if we were to adopt this reasoning, this exemption, too, would be superfluous. Section 14 provides that it "is unlawful for any person except a pharmaceutical

service plan corporation * * * to establish, maintain or operate a pharmaceutical service plan, or to solicit subscribers to or enter into contracts with respect to a pharmaceutical service plan." The Act only prohibits the furnishing of pharmaceutical services by a plan as defined in the Act, and no exemption would be necessary for such services provided by any other means. We hold, therefore, that the MediMET plan falls within the employer exemption of the Pharmaceutical Service Plan Act.

It follows that the plan is exempt from the Illinois Antitrust Act. Section 5 of that Act provides: "No provisions of the Act shall be construed to make illegal: (1) the activities of any labor organization or individual members thereof which are directed solely to labor objectives which are legitimate under the laws of the State of Illinois or the United States; * * *" (Ill. Rev. Stat. 1969, ch. 38, par. 60—5(1).) The existence of the Pharmaceutical Service Plan Act, as well as the Medical Service Plan Act, the Voluntary Health Services Plans Act, the Vision Service Plan Act, and the Dental Service Plan Act, establishes to our satisfaction that such plans constitute labor objectives which are "legitimate under the laws of the State of Illinois." We find it unnecessary, therefore, to consider the contention advanced by the UAW that health insurance plans are mandatory subjects of collective bargaining under Federal legislation, and that agreements reached through that process are not subject to State antitrust laws. See, *e.g., Teamsters Union* v. *Oliver* (1959), 358 U.S. 283, 3 L. Ed. 2d 312, 79 S. Ct. 297.

The judgment of the circuit court of Peoria County is reversed and the cause is remanded, with directions to vacate the temporary injunction and to dismiss the action.

*Reversed and remanded, with directions.*

Mr. JUSTICE CULBERTSON took no part in the consideration or decision of this case.