552 A.2d 1295

ANA TOWING, INC.

v.

PRINCE GEORGE'S COUNTY.

No. 49, Sept. Term, 1988.

Court of Appeals of Maryland.

Feb. 9, 1989.

Ellis J. Koch, Rockville, for appellant.

Ralph E. Grutzmacher, Associate Co. Atty. (Michael P. Whalen, Co. Atty., Michael O. Connaughton, Deputy Co. Atty., Upper Marlboro), on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

This case involves the Maryland Antitrust Act (the Act), Maryland Code (1975, 1983 Repl.Vol.) §§ 11–201—11–213 of the Commercial Law Article, and whether certain activities of a chartered county are subject to or specifically exempted from the provisions of the Act.

## I.

The Act, adopted by the General Assembly in 1972, is intended to "complement the body of federal law governing restraints of trade, unfair competition, and unfair, deceptive, and fraudulent acts or practices in order to protect the

public and foster fair and honest intrastate competition."
§ 11–202(a). The Act specifically prohibits certain activities, including 1) contracts, combinations or conspiracies between two or more persons which unreasonably restrain trade or commerce [1]; 2) monopolies or attempts to monopolize any part of trade or commerce with the purpose of excluding competition or of controlling, fixing, or maintaining prices in trade or commerce; 3) tie-ins or exclusive dealing arrangements which have an anticompetitive effect on trade or commerce; and 4) certain types of price discrimination. § 11–204(a)(1)—(6). The General Assembly specifically provided that the Act must be "liberally construed to serve its beneficial purposes," § 11–202(b)(1), and must not be construed to "prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest." § 11–202(b)(2)(i).

The Act also contains a number of exemptions from coverage. For example, several exemptions involve activities regulated by state or federal agencies, such as public service companies, insurance companies, and bank and savings and loan companies. § 11–203(3), (4), (9), (10). Certain activities of labor and agricultural or horticultural cooperative organizations are also exempted. § 11–203(1), (2). The exemption pertinent to this case provides that the Act does not cover the activities of "[a] political subdivision of the State in furnishing services or commodities." § 11–203(12).

## II.

ANA is a towing company licensed to do business in Prince George's County. Since 1982, the County has divid-

---

1. "Trade or commerce" includes "all economic activity within the State which involves or relates to any commodity or service." § 11–201(h). "Commodity" is defined as "goods, wares, merchandise, machinery, supplies, or any other articles in trade or commerce." § 11–201(c). "Service" is defined as "any activity performed in whole or in part for the purpose of financial gain, and includes any sale, rental, leasing or licensing for use." § 11–201(g).

ed its land area into geographic regions, designating one or two towing companies in each region to be called when a damaged or abandoned car must be towed. The method by which these companies are chosen is unclear; however, a competitive bidding process is not used.

ANA has made repeated requests to be included on the towing list, but the County has indicated that it is satisfied with the towing companies currently being used for ANA's region. ANA subsequently brought an action against the County in the Circuit Court for Prince George's County, charging violation of the Maryland Antitrust Act. Specifically, ANA claimed that the County "conspired and combined with such [other] towing services in an attempt to monopolize the towing business and to affirmatively exclude [ANA] from participating in such business." It claimed treble damage relief in the amount of $450,000.

The County contended that, in view of § 11–203(12), it was exempt from coverage under the Act because it was "furnishing services" in its relationship with the assigned towing companies. On this ground, the County moved to dismiss the complaint. The court (Johnson, J.) granted the County's motion and ANA appealed. We granted certiorari before consideration of the appeal by the Court of Special Appeals.

### III.

The question presented is whether, in dividing Prince George's County into geographic regions and assigning certain towing companies to these regions, the County is within the § 11–203(12) exemption. ANA points out that § 11–202 defines "service" as "any activity performed in whole or in part for the purpose of financial gain ...," and argues that because the County does not reap a financial gain from its actions, it cannot be "furnishing services." The County contends that the § 11–203(12) exemption is intended to be coextensive with the coverage of the Act, and that in "furnishing" a service the County need not itself perform the activity, nor profit from it.

We noted in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987), that in interpreting a statute, the court must seek to discover the purpose, aim or policy behind it.[2] The initial inquiry must be an examination of the language used, "because what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal." *Id.* We also noted that

> "... where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment.... In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense."

*Id.* (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986)).

The instant case presents a text-book example of a statutory ambiguity. The language of § 11–203(12) may be construed in a number of ways. The requirement that the County "furnish[ ] services" may mean that the County itself must perform the services. It may also require, as ANA argues, that the County gain financially from the provision or performance of services. On the other hand,

---

2. We also noted, in *Quality Disc. Tires v. Firestone Tire*, 282 Md. 7, 12, 382 A.2d 867 (1978), that in interpreting the Maryland Antitrust Act we are to be "guided (but not bound) by the opinions of the federal courts under the federal antitrust laws" dealing with the same or similar matters. The federal antitrust laws, however, do not provide for an exemption similar to § 11–203(12). The closest federal exemption would be the state action doctrine, recognized in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), which exempts state action or action directed by a state. The state action doctrine is based on principles of federalism—the relationship between the federal government and the sovereign states—and on certain limits on federal power found in the tenth and eleventh amendments. These principles are not applicable to this case. *See Town of Hallie v. City of Chippewa Falls*, 105 Wis.2d 533, 314 N.W.2d 321, 324 (1982).

"furnish" may simply require that the County supply or provide services, rather than perform them. Also, as the County argues, "service" in this context may simply be a description of the kinds of services to be covered by the Act, *i.e.*, those for profit as opposed to those not for profit. Therefore, we must decide if the term "furnish" requires that the County perform the services, and if the definition of "service" requires that one furnishing the service gain financially.

### A.

The original Maryland Antitrust Act was proposed and recommended by the Legislative Council to the 1972 General Assembly. It was part of a nationwide trend toward adoption of state antitrust laws, and was intended to complement the federal antitrust statutes by reaching intrastate antitrust problems. Legislative Council of Maryland, Report to the General Assembly of 1972 at 1. (1972).

The Maryland Act was based on the Illinois Antitrust Act, codified at Ill.Annot.Stat., ch. 38, para. 60–1 *et seq.* (Smith–Hurd 1977). As originally introduced, the Act did not contain the § 11–203(12) exemption; it was added by amendment in the House of Delegates.[3] Maryland House Journal 1174 (1972). There is no indication as to why the exemption was included in the Act.

There have been no reported cases interpreting § 11–203(12), but a recent opinion of the Attorney General of Maryland discussed the exemption. 69 Op.Atty.Gen. 9 (1984). It involved a question from the Town of La Plata, Maryland as to its potential antitrust liability. Through a competitive bidding process, the Town had granted an ex-

---

**3.** The Maryland Act's definition of "service" was, however, taken almost verbatim from the Illinois Act. *See* Ill.Annot.Stat. ch. 38, para. 60–4 (Smith–Hurd 1977). The purpose of this rather broad definition was to close "loopholes" in former Illinois antitrust law which had omitted coverage of service industries and real estate. *See id.* (Bar Committee Comments—1967 and Historical and Practice Notes—1967).

clusive cable TV franchise to one company. When the franchise period expired, the Town did not renew the contract, but granted a franchise to a second cable company. The first company refused to cease operations, and threatened to sue under federal and state antitrust laws. The Attorney General found that the Town would most likely be immune from federal antitrust liability under the state action doctrine.[4] He also noted that a "somewhat tenuous" argument could be made, under state law, that the Town, in granting the franchise, was furnishing a service or commodity to its citizens and would therefore be exempt under § 11–203(12). 69 Op.Atty.Gen. at 34.

### B.

 As already noted, in interpreting an ambiguously worded statute, a court may take into account the objectives and purpose of the enactment and may also consider the consequences resulting from one meaning rather than another. In construing § 11–203(12), we seek to avoid a result which is illogical or unreasonable.

 We hold, first, that in "furnishing" services, the County need not itself perform them. The definition of "furnish" is "[t]o supply, provide or equip, for accomplishment of a particular purpose." Black's Law Dictionary 608 (5th ed. 1979). It has also been generally held not to be synonymous with "perform;" thus, one furnishing services need not actually perform them. *See B & L Pharmacy, Inc. v. Metropolitan Life Ins. Co.*, 46 Ill.2d 1, 262 N.E.2d 462, 466–67 (1970); *Adams v. Feiges*, 206 Wis. 183, 239 N.W. 446 (1931).

We also conclude that, in the context of § 11–203(12), a political subdivision which furnishes "services" need not

---

4. The state action doctrine as it applies to local governments exempts actions by counties or municipalities which are "in furtherance or implementation of clearly articulated and affirmatively expressed state policy." *See Community Communications Co. v. Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982).

gain financially from them. In this case it is clear that the County is acting to supply or provide ("furnish") towing services (performed for the towing company's financial gain) for the purpose of clearing abandoned or damaged vehicles from the roads. This activity is well within the § 11–203(12) exemption.

If we were to adopt ANA's construction of § 11–203(12), an illogical and unreasonable result would obtain, because counties could be exempt from the Act's provision only when receiving a profit for furnishing services. There are a variety of services that counties may provide for their citizens, which may not cause financial gain to the county, but may render a profit to those performing the services. Cable television, garbage collection, street cleaning and sewage processing are examples of services which the county may itself perform or which may be contracted for with private companies. In the latter case the profit enures to the private parties rather than the county. It seems both illogical and unreasonable to decide that the General Assembly intended that the counties be exempt only when profiting from the provision of services.

In the context in which the Legislature intended that § 11–203(12) be applied, a county which provides services is not required to profit from them. This construction is both reasonable and logical, and furthers the apparent purpose of § 11–203(12) to allow political subdivisions of the State to provide necessary or desirable services to their citizens without the interdiction of the state antitrust laws.[5]

JUDGMENT AFFIRMED, WITH COSTS.

_____

5. Further evidence of this intent may be found in the General Assembly's enactments protecting counties from the reach of federal antitrust laws. In 1983 the General Assembly declared that

"It has been and shall continue to be the policy of the State to authorize each chartered county to displace or limit competition in the award of concessions on, over or under property owned or leased by the county ... in order to utilize properly the assets of the county for the best public purpose; to provide necessary or desirable governmental services at the lowest possible cost; ... and to

promote the general welfare by utilizing public property for the benefit of the citizens of the community."
Maryland Code (1957, 1987 Repl.Vol.) Art. 25A, § 5A(c)(1). *See also,* Code (1957, 1987 Repl.Vol.) Art. 23A, § 2A (municipal corporations—power to displace competition); Art. 25, § 3D (county commissioners); Art. 25B, § 13B (code counties); Baltimore City Charter, Art. II, § 57.
These laws were passed in response to the *Boulder* case (see footnote 4), and were intended to protect local governments from the potentially great financial burdens involved with antitrust litigation.