854 A.2d 259

**Andrew A. MOHAN**

v.

**Edward T. NORRIS, et al.**

**No. 1634, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

July 16, 2004.

46

**48**

Patrick J. McAndrew (Sandra J. Strebel, McAndrew, Zitver & McGrath, PA on the brief), Beltsville, for Appellant.

Betty Stemley Sconion, Pikesville (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, KRAUSER, and CHARLES E. MOYLAN, JR. (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

This case presents the question of whether a police officer who is certified for permanent appointment by the Maryland Police Training Commission ("MPTC"), but is a probationary police officer employee of the Department of State Police ("State Police"), is "in a probationary status," and therefore is not a "law enforcement officer," under the Law Enforcement Officers' Bill of Rights ("LEOBR").

In an action for injunctive and declaratory relief by Andrew A. Mohan, the appellant, against Colonel Edward T. Norris, then-Secretary of the State Police, and the State Police itself, the appellees, the Circuit Court for Prince George's County ruled that, on the undisputed facts, Mohan, as a probationary police employee of the State Police, was not a "law enforcement officer," under the LEOBR, and therefore was not entitled to the protections of that law in defending disciplinary

charges lodged against him by the State Police. Dissatisfied with the judgment, Mohan noted this appeal.[1]

For the following reasons, we agree with the circuit court that Mohan was "in a probationary status," within the meaning of that phrase in the LEOBR, and therefore was not entitled to invoke the protections of that law.

## FACTS AND PROCEEDINGS

The facts in this case are not in dispute. Immediately upon graduation from the Prince George's County Police Municipal Academy, in December 1997, Mohan was hired as a police officer by the Town of Edmonston. At that time, he was issued a "provisional certification" card by the MPTC. Mohan continued in his employment by the Town of Edmonston until September 1998, when he joined the Town of Cheverly Police Department. Upon joining that Department, he was issued a "permanent certification" card by the MPTC.

On January 7, 2002, Mohan left the Town of Cheverly Police Department, upon being appointed by the State Police to the position of "Trooper Candidate." Two days later, he signed a written "Agreement" with the State Police setting forth the terms of his employment, including a 24–month probationary period. The Agreement stated that the probationary period would be in effect upon the commencement of employment, during the time that Mohan would be in training as a Trooper Candidate, and thereafter, upon successful completion of training and his assumption of duties with the State Police.

On July 30, 2003, still during his 24–month probationary period, Mohan was served with two sets of disciplinary docu-

---

1. The question presented as worded by Mohan is:

 Is a law enforcement officer employed by the Department of State Police entitled to the protections of the [LEOBR] in a disciplinary matter when, at the time disciplinary charges are brought against him, he has been a law enforcement officer certified by the Maryland Police Training Commission for longer than the probationary period established by the Police Training Commission statute, but has been a police officer with the Department of State Police for less than the probationary period established by the Department of State Police statute?

ments, charging him with violating rules, policies, and procedures of the State Police. He responded by demanding a hearing and invoking other procedural protections of the LEOBR. He was informed by the State Police Administration that the disciplinary matters were not covered by the LEOBR because he still was a probationary police officer employee. Mohan then brought this action for injunctive and declaratory relief.

## DISCUSSION

### *Standard of Review*

The issue Mohan raises on appeal is a question of statutory interpretation, which is purely one of law. *Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 307, 841 A.2d 858 (2004); *Board of License Comm'rs for Anne Arundel County v. Corridor Wine, Inc.*, 150 Md.App. 275, 280, 819 A.2d 1141 (2003); *Baltimore County Licensed Beverage Ass'n, Inc. v. Kwon*, 135 Md.App. 178, 189, 761 A.2d 1027 (2000). Our standard of review, therefore, is *de novo*. *Salamon*, supra, 379 Md. at 307, 841 A.2d 858; *Montgomery County v. Jamsa*, 153 Md.App. 346, 352, 836 A.2d 745 (2003).

### *Pertinent Statutes and Regulations*

■ The LEOBR is a comprehensive statutory scheme, enacted in 1974, that extends certain procedural protections to "law enforcement officers," as defined by statute, in disciplinary matters. *Fraternal Order of Police, Montgomery County Lodge No. 35 v. Mehrling*, 343 Md. 155, 181, 680 A.2d 1052 (1996); *Baltimore City Police Dep't v. Andrew*, 318 Md. 3, 12, 566 A.2d 755 (1989). At the time relevant to this case, the LEOBR was codified at Md.Code (1996, 2002 Supp.), Article 27, sections 727 through 734D.[2] Section 727(b) defined a "law enforcement officer" as a person "who, in an official capacity, is authorized by law to make arrests and who is a member of

---

2. Effective October 1, 2003, the LEOBR was recodified at Md.Code (2003), sections 3–101 through 3–113 of the Public Safety Article ("PS").

one of the following law enforcement agencies[,]" including the State Police.[3] Section 727(c) further stated that a " 'law enforcement officer' does not include[,]" among other things, "an officer serving in a probationary status except when allegations of brutality in the execution of his or her duties are made involving an officer who is in a probationary status. . . . The term 'probationary status' includes only an officer who is in that status upon initial entry into the Department."[4]

■ The LEOBR applies only to police disciplinary matters, and preempts all other conflicting statutes on that subject:

[T]he provision of this subtitle shall supersede any State, county, or municipal law, ordinance, or regulation that conflicts with the provision of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle.

Art. 27, § 734B.[5]

The State Police is a principal department of Maryland State government.[6] It was created in 1935, upon enactment of the State Police Act ("SPA"). At the time relevant to this case, the SPA was codified at Md.Code (1998, 2002 Suppl.), Article 88B, sections 1 through 80.[7]

The State Police is charged with the "general duty to safeguard the lives and safety of all persons within the State, to protect property, and to assist in securing to all persons the equal protection of the laws." Art. 88B, § 3.[8] The State Police is supervised and managed by a Secretary (formerly

---

3. *See* PS section 3–101(e)(1).

4. *See* PS section 3–101(e)(2)(iv).

5. *See* PS section 3–102(a) and (b).

6. *See* PS section 2–201.

7. Effective October 1, 2003, those statutes were recodified at PS sections 2–101 through 2–703.

8. *See* PS section 2–301(a)(1).

designated the Superintendent), who reports directly to the Governor. Art. 88B, § 14.[9] Among the Secretary's powers are those to establish standards, qualifications, and prerequisites of character, training, education, and experience for all employees (section 15(b)(4)); to establish ranks, grades, and classifications of employment and determine the authority and responsibilities of each (section 15(b)(5) and (6)); to appoint, promote, reduce in rank or classification, reassign, reclassify, retire, and discharge all employees as prescribed by law (section 15(b)(7)); to regulate attendance, conduct, training, discipline, and procedure for all employees (section 15(b)(8)); and to provide systems for periodic performance evaluation and improvement of employees (section 15(b)(9)).[10]

Some of the State Police's employees are "police employees," Art. 88B, § 2(4), who are assigned law enforcement powers authorized by statute. Art. 88B, § 4.[11] Under section 18, "[a]ll police employees, including persons appointed to the [State Police] for training prior to regular assignment as a police employee, shall remain in a probationary status for a period of two years from the date of appointment to the [State Police]."[12] Thus, the 24–month probationary period established in the Agreement between Mohan and the State Police was in accordance with the probationary period set by the General Assembly, by statute. Further, under Art. 88B, section 18, during the probationary status, the Secretary may discharge the police employee for any cause that, in his sole discretion, he deems sufficient.

The MPTC is an agency within the Maryland State Department of Public Safety and Correctional Services. At the pertinent time in this case, the statutes governing the MPTC

---

9. *See* PS section 2–202.

10. *See* PS sections 2–204(b)(6), (7), (9), (10), and (11), respectively.

11. *See* PS section 2–101(i)(defining "police employees"), and section 2–412 (setting forth the authorized law enforcement powers of "police employees" of the State Police).

12. *See* PS section 2–403(a).

were set forth in the Police Training Commission Act ("PTCA"), Md.Code (1997, 2002 Suppl.), Article 41, section 4–201.[13] The MPTC has powers and duties over police training, including establishing police training schools, setting standards for the schools and police training courses, establishing curriculum and courses of study, and inspecting the schools. Art. 41, § 4–201(d).[14] In addition, the MPTC has authority to certify police officers who have satisfactorily met its training standards. Art. 41, § 4–201(d)(6)(i).[15]

Pursuant to Article 41, section 4–201(a)(6), a "permanent appointment" takes place when a police officer has satisfied the MPTC's minimum standards and has been certified by it as a police officer.[16] A person seeking a permanent appointment, but not yet qualified, may be given a probationary appointment as a police officer, for a period not exceeding one year, to enable him to complete the training necessary to accomplish the permanent appointment. Art. 41, § 4–201(e).[17] A person may not be given or accept a permanent or probationary appointment as a police officer unless he satisfactorily meets the qualifications established by the MPTC. Art. 41, § 4–201(f).[18]

The MPTC also has authority to adopt necessary or appropriate rules and regulations. Art. 41, § 4–201(d)(11).[19] In COMAR 12.04.01.01(13)(a), promulgated pursuant to that authority, "probationary period" is defined to mean "a period of a maximum of 365 days[,]" under Article 41, section 4–201, "(i)

---

13. Effective October 1, 2003, the PTCA was recodified at PS sections 3–201 through 3–218.

14. *See* PS section 3–207.

15. *See* PS section 3–209.

16. *See* PS section 3–215(a)(2).

17. *See* PS section 3–215(c).

18. *See* PS section 3–215(b).

19. *See* PS section 3–208(a)(1).

[d]uring which a police officer with a provisional certification ... may perform [his] duties while obtaining the training specified in this chapter; and (ii) [w]hich ends the earlier of 365 days or upon completion or mandated training." Subsection (13)(b) further explains, however, that " '[p]robationary period' does not relate to or restrict a probationary period that may be imposed by the hiring agency."

### Analysis

■ Mohan contends that the circuit court committed legal error when it interpreted the phrase, "an officer serving in a probationary status ... upon initial entry to the Department," in section 727(c) of the LEOBR, to include an officer who holds a permanent appointment from the MPTC, but is in a probationary status as a police employee of the State Police. He maintains that once a police officer has been certified for permanent appointment by the MPTC, he no longer is an officer "in a probationary status," for purposes of the LEOBR, even if he is in a probationary status with the law enforcement agency employing him. His contention is founded primarily upon *Moore v. Town of Fairmount Heights,* 285 Md. 578, 403 A.2d 1252 (1979), in which the Court of Appeals held that a police officer who had failed to complete a required police academy training course, and therefore was not qualified for "permanent appointment" under the PTCA, also was not a "law enforcement officer" within the meaning of the LEOBR. A more detailed discussion of *Moore* is required to fully understand Mohan's contention in the case at bar.

In 1970, Moore was employed as a police officer by the Town of Fairmount Heights. He left in 1974, but was rehired in 1976. Thereafter, he attempted to complete a required police academy training course. When police academy officials discovered that Moore had tried to cheat on a training examination, he was not allowed to proceed with the course. Eventually, he withdrew from the academy. The Town terminated Moore from employment as a police officer for, among other reasons, failing to complete the police academy training course.

Moore challenged his termination, and demanded a hearing under the LEOBR. That demand was denied on the ground that, at most, Moore was "in a probationary status" and therefore did not qualify as a "law enforcement officer" under the LEOBR. In an action by Moore for declaratory and injunctive relief, the circuit court agreed with the Town. The Court of Appeals took the case directly, and affirmed the judgment.

In determining Moore's status *vel non* as a "law enforcement officer," under the LEOBR, given that he had not completed the required police academy training program, the Court looked not only to the language of the LEOBR but also to the language of the PTCA, which then was codified at Md.Code (1976, 1978 Supp.), Article 41, section 70A. It did so because statutes addressing the same topics should be construed harmoniously, to give each their full effect. *Moore, supra,* 285 Md. at 585, 403 A.2d 1252 (citing *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977)). *See also Navarro–Monzo v. Washington Adventist Hosp.,* 380 Md. 195, 204, 844 A.2d 406 (2004).

The Court read sections 70A(e) and (f) of the PTCA, the predecessor statutes to sections 4–201(c) and (f), to mean that a police officer who has not met the training requirements established by the MPTC, including successful completion of a police training course, cannot be issued a permanent appointment certificate and therefore is not qualified to serve as a police officer at all. It noted that the only probationary status recognized by the PTCA is the one-year grace period in which an officer seeking a permanent appointment may engage in the training necessary to accomplish that goal. Reading the statutes harmoniously, the Court reasoned that, because Moore was not qualified to serve as a permanent police officer under the PTCA, he also was not in a non-probationary status, for purposes of the LEOBR. Therefore, Moore was not a "law enforcement officer" under the LEOBR.

The Court also addressed an argument by Moore that, because he was employed by the Town until 1974, and then

reemployed by the Town in 1976, he was not in a probationary status "upon initial entry into the Department," as that phrase is used in section 727(c). In other words, it was Moore's contention that, because his initial entry onto the Town's police force occurred in 1970, he could not be in a probationary status upon re-entry into the Town's police force in 1976. In rejecting that argument, the Court explained that the phrase "upon initial entry into the Department" operated to "protect permanent officers who receive transfers or promotions, precluding giving them probationary status in their new assignments. However, the clause would have no application to those persons who never attained permanent status because they had failed to complete an approved training course." *Moore, supra,* 285 Md. at 585, 403 A.2d 1252.

In the case at bar, Mohan argues that, under *Moore,* a person who is in permanent status as a police officer, under the PTCA, is *not* "in a probationary status" under section 727(c) of the LEOBR, even if he is in a probationary status with his employing law enforcement agency. As Mohan puts it in his brief, "the essence of the *Moore* holding is that, in the LEOBR, 'probationary status' refers *only* to those police officers who have not successfully completed the MPTC training course and have not been certified by that Commission." (Emphasis in original.) Thus, in July 2003, having already obtained his permanent appointment under the PTCA (in 1998), Mohan was not "in a probationary status" under the LEOBR, even though he still was serving the 24–month probationary period of his employment by the State Police. Accordingly, Mohan argues, he was entitled to the protections of the LEOBR.

The appellees respond that a statutory interpretation of the LEOBR phrase, an officer "in a probationary status ... upon initial entry into the Department," to include an officer serving the 24–month statutory probationary period for police employees of the State Police, under Article 88B, section 18, harmonizes those statutes, gives them the benefits of their full meanings, and is not inconsistent with either the meaning or

language of the PTCA. They further argue that Mohan's argument contorts the holding in *Moore.*

 The primary goal of statutory interpretation is to determine and effectuate the intention of the legislature. *Motor Vehicle Admin. v. Jones,* 380 Md. 164, 175, 844 A.2d 388 (2004); *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332 (2001); *Heartwood 88, Inc. v. Montgomery County,* 156 Md. App. 333, 358, 846 A.2d 1096 (2004). Our starting point in that endeavor is the language of the statute itself. *Stern v. Bd. of Regents, Univ. System of Md.,* 380 Md. 691 720, 846 A.2d 996 (2004). The words of a statute are to be given their usual and ordinary meaning. *Ridge Heating, Air Conditioning and Plumbing, Inc. v. Brennen,* 366 Md. 336, 350, 783 A.2d 691 (2001). "A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003); *County Council of Prince George's County v. Dutcher,* 365 Md. 399, 416–17, 780 A.2d 1137 (2001).

 If the language of a statute is clear and unambiguous, stating a definite and plain meaning, we ordinarily will not look beyond it to determine legislative intent; we simply apply the statute as it reads. *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478 (2000); *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628 (1987). When a statutory term or provision is ambiguous, however, we will glean its intended meaning by applying the principles of statutory interpretation. *Price, supra,* 378 Md. at 387, 835 A.2d 1221. When the provision is part of a statutory scheme, will interpret it in the context, as one element of a whole, so as to harmonize and reconcile the statutory provisions. *The Gordon Family Partnership v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753 (1997); *Moore, supra,* 285 Md. at 585, 403 A.2d 1252. We may consider the objective and purposes of the enactment. *ANA Towing, Inc. v. Prince George's County,* 314 Md. 711, 717, 552 A.2d 1295 (1989); *Birkey Design Group,*

*Inc. v. Egle Nursing Home, Inc.,* 113 Md.App. 261, 269, 687 A.2d 256 (1997).

While the text of section 727(c) of the LEOBR makes plain that a "law enforcement officer" is not an officer "in a probationary status ... upon initial entry to the Department" (except as expressly stated pertaining to police brutality allegations), the LEOBR does not define either "probationary status" or "initial entry" and, as the Court in *Moore* observed, the meaning of that text is not readily apparent.

In *Moore,* two statutes were implicated by the facts: the LEOBR, because the officer, who had at one time left his agency and been rehired, was seeking coverage in a disciplinary termination proceeding; and the PTCA, because the officer never had completed a training course, a prerequisite to permanent certification as a police officer under the PTCA. It was important, therefore, that the Court not ascribe a meaning to the LEOBR's phrase "in a probationary status ... upon initial entry to the Department" that conflicted or was incompatible with the PTCA, and that it accomplish its interpretive task so as to harmonize the two statutes.

With that objective, the Court concluded that an officer who is not qualified for permanent appointment as a police officer under the PTCA, and indeed for that reason cannot hold the position of police officer and must be terminated, is not at the same time a non-probationary law enforcement officer entitled to the protections of the LEOBR. Any other conclusion would have produced the absurd and inconsistent result that an officer not qualified to hold any police officer's position with a law enforcement agency would have more rights under the LEOBR than a qualified police officer in a probationary period with the agency.

The Court's analysis in *Moore* did not suggest, however, that the PTCA dictates, rather than informs, the meaning of ambiguous terms in the LEOBR. That is the faulty predicate for Mohan's argument that, under *Moore,* the only officers "in a probationary status" under section 727(c) of the LEOBR are those who have not been issued a permanent appointment by

the MPTC. To be sure, under *Moore,* an officer who does not have a permanent appointment is at most in a probationary status under the LEOBR. That does not mean, however, that every officer holding a permanent appointment from the MPTC also is in non-probationary status under the LEOBR. *Moore* did not hold that a police officer with a permanent appointment from the MPTC necessarily is excluded from being "in a probationary status" for purposes of the LEOBR.

Moreover, to impose such a limitation on the meaning of the phrase "in a probationary status" in section 727(c) would be tantamount to rewriting the statutory text by adding words that are not there. The logical extension of Mohan's suggested statutory interpretation is that the only period of probationary status being referenced in that section, and thus being excluded from LEOBR coverage, is the one-year probationary period, under the PTCA, for an officer to receive training for a permanent appointment. Had the General Assembly wished to limit the "probationary status" in section 727(c) to that grace period, however, it could have included words to that effect. It did not do so, and it would be contrary to our proper role to interpret the statutory language to add new language. We note, furthermore, that in its own regulations, the MPTC has interpreted the one-year probationary period as being unrelated to and not restrictive of any probationary period imposed by hiring law enforcement agencies. *See* COMAR 12.04.01.01B(13)(b), *supra* (stating that the one-year probationary period for police training "does not relate to or restrict a probationary period that may be imposed by the hiring agency").

We decline to interpret section 727(c) of the LEOBR to mean that the only officers who are "in a probationary status" are those who have not yet received a permanent appointment by the MPTC. Thus, merely because Mohan held a permanent appointment under the PTCA did not mean he was not "in a probationary status" under section 727(c) when the disciplinary charges were lodged against him by the State Police. The question, then, is whether, at the relevant time,

Mohan's status as a probationary police employee of the State Police meant he was "in a probationary status . . . upon initial entry to the Department," within the meaning of LEOBR section 727(c).

Mohan argues, again using *Moore* as a starting point, that the answer to this question is no, because any other answer would create an unfair hardship for veteran police officers who change employment from one law enforcement agency to another. He maintains that, for this reason, the "initial entry" language in section 727(c) should be read to mean that a police officer only will be in a probationary status one time, for purposes of the LEOBR: when he first is hired by his first law enforcement agency.

The analysis by the Court in *Moore* does not support that interpretation either. Applying its common sense, the Court in that case reasoned that, if a police officer can avoid being on "probationary status upon initial entry to the Department" merely by leaving and then being rehired by the same law enforcement agency, so as no longer to be on "initial entry," the limitation of LEOBR coverage for probationary officers will be so easily circumvented as to be meaningless. The Court concluded that the purpose of the "initial entry" language was not to create such a loophole but to protect officers who receive promotions or transfers within their employing law enforcement agencies from automatically being reverted to a probationary status upon the happening of those events. The Court in *Moore* did not suggest that a police officer who leaves employment with one law enforcement agency to take employment with another, in a position that is initially probationary, is not "in a probationary status" within the meaning of section 727(c) of the LEOBR.

 Reading the LEOBR, the SPA, and the PTCA together, with the purpose of harmonizing and fully effectuating them so as to implement the intention of the General Assembly in enacting all of them, leads us to conclude that a police officer employee of the State Police who is serving his 24–month probationary period with that agency is "in a probation-

ary status ... upon initial entry to the Department," under section 727(c) of the LEOBR.

From its enactment in 1935, the SPA has imposed a probationary period for all police employees from the date of their appointment to the State Police, during which the Superintendent (later Secretary) had broad discretionary authority to discharge them for whatever reason he thought sufficient. Originally, the probationary period was for one year, and was imposed as follows:

> All of the police employees appointed to the Department shall be probationer, and on probation for a period of one year from the date of appointment.

Md.Code (1935 Supp.), Art. 88B, § 10, as enacted by 1935 Law of Maryland, ch. 303, section 11.

In 1945, the probationary period was extended to two years. 1945 Laws of Maryland, ch. 294. The SPA was amended in 1968 to, among other reasons, "provide for the qualifications, manner of appointment, probationary status, compensation, promotion, suspension, demotion, and termination of employment of employees of the [State Police]." 1968 Laws of Maryland, ch. 547. At that time, the "Probationary Status" section of the SPA was rewritten, to state:

> All police employees, including persons appointed to the [State Police] for training prior to regular assignment as a police employee, shall remain *in a probationary status* for a period of two years from the date of appointment to the [State Police].... The Superintendent may discharge an employee on probationary status for any cause which he, in his sole discretion, deems sufficient.

*Id.* (codified at Art. 88B, § 18) (emphasis added).

The "in a probationary status" language in section 18 of the SPA thus was in effect in 1974, when the General Assembly enacted the original LEOBR, 1974 Laws of Maryland, ch. 722, which did *not* exempt probationary offices from inclusion; and in 1975, when the definition of "law enforcement officer" in the LEOBR was amended to state that " '[l]aw-enforcement officer' does not include an officer serving *in a probationary*

*status* except when allegations of brutality in the execution of his duties are made...." 1975 Laws of Maryland, ch. 809 (emphasis supplied). The legislative intention motivating the 1975 "in a probationary status" exclusion from LEOBR coverage was expressly stated as being to "provid[e] that [the LEOBR's] provisions ... do not apply to law enforcement officers in a probationary status, except where allegations of brutality are involved...." *Id.*

The General Assembly necessarily was aware, when it enacted the 1975 law excluding officers "in a probationary status" from LEOBR coverage (except in brutality cases), that police officer employees of the State Police, otherwise covered by the LEOBR, were by statute "in a probationary status" for 24 months after their dates of appointment. We glean, from the General Assembly's use of precisely the same language to create the LEOBR probationary status exclusion as was used to establish the probationary period for police officers of the State Police, that it meant for the exclusion to apply to probationary police employees of the State Police—an outcome consonant with the autonomy the Secretary of the State Police has in employment decisions over probationers within that law enforcement agency.

For the reasons explained, we hold that, as a probationary police employee of the State Police, Mohan was not covered by the LEOBR, notwithstanding that he was certified for permanent employment by the MPTC. Accordingly, the circuit court's decision was legally correct.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**