## ROBERT M. MOORE *v.* TOWN OF FAIRMOUNT HEIGHTS, MARYLAND

[No. 115, September Term, 1978.]

*Decided July 25, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Benjamin R. Wolman,* with whom were *Wolman & Gushee* on the brief, for appellant.

*Alexander Williams, Jr.,* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The resolution of the dispute in this case depends upon our interpretation of the provisions of two statutes, the Law-Enforcement Officers' Bill of Rights, Maryland Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.), Art. 27, § 727 *et seq.,* and the Police Training Commission Act, Code (1957, 1978 Repl. Vol.), Art. 41, § 70A, relating to which police officers have "probationary status."

The plaintiff-appellant in this case, Robert M. Moore, was hired as a police officer in May 1970 by the Town of Fairmount Heights, located in Prince George's County. He was discharged in October 1974 but was rehired or "reinstated to duty" effective April 1, 1976. Officer Moore began attending the Prince George's County Police Academy in February 1978. According to the testimony below of the Fairmount Heights Chief of Police, Officer Moore's completion of the training course at the police academy was a requirement of the Police Training Commission, a state agency.

In March 1978, Officer Moore was accused by police academy personnel of cheating on an examination at the academy, and he was told that the academy was going to

dismiss him because of the accusation. Moore, according to his testimony below, informed the academy personnel that he wanted to discuss his situation with Fairmount Heights officials, whereupon the academy personnel required him to turn in the equipment and books which he was using. Fairmount Heights terminated Officer Moore's employment in a letter dated May 15, 1978, but effective March 16, 1978, the date he left the academy. The town cited as reasons Moore's withdrawal from the academy, his failure to complete the academy training course, and his failure to report to the Chief of Police. Moore, by counsel, requested that the town give him a hearing, but the request was denied.

Officer Moore then brought this action in the Circuit Court for Prince George's County, requesting a show cause order as to why the town should not be required to afford him a hearing under the provisions of the Law-Enforcement Officers' Bill of Rights and requesting an order enjoining the town from discharging him without first holding a hearing.[1]

The town defended the action principally on the ground that Officer Moore was in probationary status and that an officer in such status is not entitled to a hearing under the Law-Enforcement Officers' Bill of Rights. After a hearing in the circuit court, the trial judge delivered an oral opinion, finding that Officer Moore "was rehired into the force as of" April 1, 1976, that under the Police Training Commission Act, Art. 41, § 70A, he could not, from April 1976 on, attain permanent status until he had completed a training course at

---

1. The Law-Enforcement Officers' Bill of Rights, in § 730 of Art. 27, provides, with exceptions not here pertinent, for a hearing before the dismissal of a law-enforcement officer. Section 731 deals with final decisions affecting law-enforcement officers, and § 732 provides for appeals to the circuit courts, with a further right of appeal to the appellate courts, from decisions rendered under § 731. Section 734, which appears to be addressed to a situation such as alleged here, provides:

"Any law-enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the circuit or the Baltimore City Court where he is regularly employed for any order directing the law-enforcement agency to show cause why the right should not be afforded."

an academy, that his failure to complete a training course left him in probationary status at the time of his discharge, and that, therefore, he was not entitled to a hearing under the Law-Enforcement Officers' Bill of Rights. The circuit court expressed the opinion that, in light of Officer Moore's failure to complete the course, the town had no authority to retain him as a police officer.

Following a final judgment denying the requested relief, Officer Moore took an appeal to the Court of Special Appeals. Because the case presented an issue of statutory interpretation not previously dealt with by the Maryland courts, and which could affect a great many police officers in this State, we issued a writ of certiorari before the case was heard in the Court of Special Appeals. We shall affirm.

Before addressing the statutory interpretation question presented, it should be noted that the plaintiff has consistently based his claim of entitlement to a hearing solely on the provisions of the Law-Enforcement Officers' Bill of Rights, Art. 27, § 727 *et seq.* At oral argument in this Court, plaintiff's counsel expressly disclaimed any reliance upon the due process clauses of the federal or state constitutions or upon any other grounds except Art. 27, § 727 *et seq.* Consequently, we limit our consideration of the matter to the statutory ground asserted.[2] In addition, since the Town of Fairmount Heights is the only defendant in this proceeding, we have not considered what procedural rights and remedies, if any, an officer might be able to assert against a government sponsored or approved police training academy which has discharged him before completion of a training course.

As previously mentioned, *supra,* n. 1, the Law-Enforcement Officers' Bill of Rights, in § 730 of Art. 27, gives a "law-enforcement officer" the right to a hearing before dismissal. However, § 727 (b-1) provides, with exceptions not

---

2. For this reason, cases dealing with claims of entitlement to hearings on other grounds are not here pertinent. *See, e.g.,* Bishop v. Wood, 426 U. S. 341, 96 S. Ct. 2074, 48 L.E.2d 684 (1976); Mathews v. Eldridge, 424 U. S. 319, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976); Goss v. Lopez, 419 U. S. 565, 95 S. Ct. 729, 42 L.E.2d 725 (1975); Board of Regents of State Colleges v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972).

here relevant, that a *"Law-enforcement officer"* for purposes of the Act "does not include an officer serving in a probationary status." The term "probationary status" is not defined in the statute, except that § 727 (b-1) states that the "term *'probationary status'* includes only an officer who is in that status upon initial entry into the Department.[3]

Although the phrase "probationary status" is not defined in the Law-Enforcement Officers' Bill of Rights, it is dealt with in the statute relating to the Police Training Commission, Art. 41, § 70A. This Act establishes the Police Training Commission as a state agency within the Department of Public Safety and Correctional Services, § 70A (b). In § 70A (d), the Commission is authorized, *inter alia,* to establish standards for the approval of state, regional, county and municipal police training schools (§ 70A (d) (1)); to approve such schools, inspect them from time to time and revoke approvals (§ 70A (d)(2)); to prescribe courses of study, attendance requirements, standards for operation, etc. (§ 70A (d) (3)); to prescribe qualifications for instructors (§ 70A (d) (4)); to certify police officers who have satisfactorily completed training programs (§ 70A (d) (5)); to itself conduct and operate police training schools (§ 70A (d) (6)); and to make such rules and perform such other acts as may be necessary or appropriate to attain the objectives of

---

3. The provisions of Art. 27, § 727, pertinent to this case are as follows:

"§ 727. Definitions.

"(a) In this subtitle, the following words have the meanings indicated.

"(b) *'Law-enforcement officer'* means any person who, in his official capacity, is authorized by law to make arrests and who is a member of one of the following law-enforcement agencies:

\* \* \*

"(4) The police department, bureau, or force of any incorporated city or town;

\* \* \*

"(b-1) *'Law-enforcement officer'* does not include an officer serving in a probationary status except when allegations of brutality in the execution of his duties are made involving an officer who is in a probationary status. The provisions of this subtitle do not apply to persons serving at the pleasure of the police commissioner of Baltimore City. The term *'probationary status'* includes only an officer who is in that status upon initial entry into the Department."

the statute and to carry out the Commission's functions (§ 70A (d) (9) and (13)). Subsection (e) of § 70A provides that a "probationary appointment as a police . . . officer . . . may be made for a total period not exceeding one (1) year for the purpose of enabling such a person seeking permanent appointment to take a training course." Subsection (f) states that no person shall be given "a probationary or permanent appointment as an entrance-level police . . . officer . . . unless such person satisfactorily meets such qualifications as may be determined by the Commission." [4]

It would seem clear from the language of subsections (e) and (f) of § 70A that one cannot be a permanent police officer for a municipality unless he has taken the police training course at an approved training school. Subsection (e) authorizes only a *probationary* appointment as a police officer (and then for only one year) to enable one *seeking* permanent appointment to take a training course. The import of the language is that one cannot *attain* permanent status until he has finished the training course. Subsection (f) confirms this. It prohibits giving probationary or permanent status to anyone as an entrance-level police officer unless that person satisfactorily meets the qualifications established by the Commission, and the record in this case discloses without contradiction that one of the qualifications for permanent status required by the Commission is successful completion of a training course.

In arguing that he was in a permanent rather than a

---

4. Subsections (e) and (f) of § 70A, in their entirety, are as follows:

"(e) *Probationary appointment as police or security officer, supervisor or administrator.* — A probationary appointment as a police or security officer, police supervisor or police administrator may be made for a total period not exceeding one (1) year for the purpose of enabling such a person seeking permanent appointment to take a training course as prescribed in this section. Such appointee shall be entitled to leave of absence with pay during the period of the training program.

"(f) *Appointment as entrance-level police or security officer, supervisor or administrator.* — On or after June 1, 1972 no person shall hereafter be given or accept a probationary or permanent appointment as an entrance-level police or security officer, police supervisor or police administrator, unless such person satisfactorily meets such qualifications as may be determined by the Commission."

probationary status, the plaintiff relies upon his own testimony to this effect in the circuit court:

"Q. Are you serving on your initial probationary status in that department? A. No, sir.

"Q. Are you serving on any sort of probationary status in that department? A. No, sir.

"Q. Have you ever been advised in writing or any other means that you were in fact a probationary officer? A. No."

He also relies upon the following testimony of the town police chief:

"Q. Do you have any records, sir, indicating that he [Appellant] is a probationary officer. Did you ever send him a letter and tell him, for example, he was a probationary officer? A. No, I never sent him a letter.

"Q. It is your testimony then, sir, that there is nothing in your records to show that he is in fact a probationary policeman? A. Nothing that says that he is a probationary policeman."

However, the facts that the plaintiff regarded himself as a permanent officer, that he had not been sent a letter by the chief informing him that he was only a probationary officer, and that the town records failed to reveal his status, cannot override the requirements of state law. Where a particular status is controlled by statute setting forth certain qualifications and requirements, one lacking the qualifications obviously cannot attain that status merely by his subjective beliefs or the lack of information in records.

The plaintiff also invokes the clause in the Law-Enforcement Officers' Bill of Rights, Art. 27, § 727 (b-1), that the "term *probationary status*' includes only an officer who is in that status upon initial entry into the Department." The plaintiff contends that his initial entry into the Department was in 1970, and that it would be unrealistic to view him as being a probationary employee for eight years. Although it might be highly unusual for one to be a

probationer for eight years, we doubt that one lacking statutory qualifications for permanent status as a police officer can, absent any exception in the statute, attain such status by something analogous to a prescriptive right.[5]

Moreover, we believe that the plaintiff's "initial entry" within the meaning of the Law-Enforcement Officers' Bill of Rights was when he was hired for the second time in 1976. To view the statute otherwise would mean that a probationary police officer could, with the cooperation of his employer, obtain permanent status by the simple expedient of leaving his employment and then being rehired. We do not believe that the Legislature intended that statutory requirements for "permanent status" could be so easily circumvented.

Where two statutes address the same topic, they should be construed harmoniously to give full effect to each. *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A. 2d 1007 (1977); *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 403, 365 A. 2d 279 (1976). We should if possible, therefore, give effect to the clear requirements of the Police Training Commission Act as well as the provisions of the Law-Enforcement Officers' Bill of Rights. In light of this, the reasonable interpretation of the clause in the latter statute, that probationary status includes only an officer in that status upon initial entry into the Department, is that it applies only to those who have once attained permanent status. In other words, it would protect permanent officers who receive transfers or promotions, precluding giving them a probationary status in their new assignments. However, the clause would have no application to those persons who never attained permanent status because they had failed to complete an approved training course.

Since the plaintiff Moore was not a permanent officer because of his failure to successfully complete a training course at the Prince George's County Police Academy, he was

---

5. In this connection, it is noteworthy that the requirement in the Police Training Commission Act, that a police officer must complete a training course to attain permanent status, dates from 1966, Ch. 286 of the Acts of 1966.

not entitled to a hearing under the Law-Enforcement Officers' Bill of Rights.

*Judgment affirmed.*
*Appellant to pay costs.*